The STATE of Ohio, Appellee,

v.

BRITTON, Appellant.

[Cite as *State v. Britton,* 181 Ohio App.3d 415, 2009-Ohio-1282.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22673.

Decided March 20, 2009.

John J. Danish, Dayton Law Director, and Amy B. Musto, Assistant City Prosecutor, for appellee.

Bradley D. Anderson, for appellant.

---

DONOVAN, Presiding Judge.

{¶ 1} Defendant-appellant Christina Britton appeals from her conviction and sentence for one count of aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree.

{¶ 2} On December 19, 2007, a criminal complaint was filed charging Britton with one count of aggravated menacing. Britton was arraigned on January 3, 2008, and pleaded not guilty. Following a bench trial held on January 28, 2008, the trial court found Britton guilty of the sole count in the complaint. On February 26, 2008, the trial court sentenced Britton to 60 days of imprisonment (suspended), a fine of $50, courts costs, and supervised probation for one year. The court also ordered Britton to have no further contact with the victim, Amber Stephens. Britton filed a timely notice of appeal with this court on March 13, 2008.

I

{¶ 3} The incident that forms the basis for this appeal occurred on December 16, 2007, in the parking lot of the Walgreen's Pharmacy located on Salem Avenue in Dayton, Ohio. At the time that the offense occurred, the victim, Amber Stephens, was employed as a technician in the store's pharmacy. Stephens's shift ended that day at approximately 3 p.m. As she exited the store into the parking lot, she observed a black car parked near her own car in the back of the lot. Stephens testified that she thought it strange that someone would park a car close to her vehicle because she intentionally parked in an unused section of the store's lot. As Stephens approached her car, she recognized the driver of the black car as Britton. She also observed a male in the front passenger seat with Britton.

{¶ 4} Once Stephens realized that Britton was the driver of the black car, she hurried to her own car and quickly got inside. Britton pulled her car next to Stephens's car, and Stephens testified that she said, "[W]hat are you doing? Are you sitting here watch [sic] me in the parking lot? What are you on?" Stephens further testified that Britton responded by saying "I have [not] forgotten what happened." Stephens testified that Britton then reached inside her jacket as if she was going to retrieve something and stated, "[I]t's not over." Stephens testified that at this point, she drove away to avoid any further confrontation.

{¶ 5} Stephens knew Britton from an incident approximately one year earlier in which Britton appeared at the Salem Avenue Walgreen's store to drop off a prescription to be filled for her son. Stephens was the pharmacy employee who initially took Britton's prescription. Upon Britton's return to the pharmacy to retrieve her son's medication, another Walgreen's employee informed her that someone else had already picked up the filled prescription. Britton became upset and accused Stephens of stealing her son's prescription. Britton then proceeded to verbally threaten Stephens in the parking lot of the store, and Stephens brandished a knife in order to escape the confrontation.

{¶ 6} Stephens also testified that there were "other incidents" that occurred in 2007 but provided no detail or description of those incidents. The court permitted testimony about a subsequent event on December 19, 2007, when someone broke a window on Stephens's vehicle while it sat in the parking lot where she worked. Although Stephens did not see who damaged her car, she believed that Britton was responsible because she had seen Britton in the Walgreen's parking lot near her car shortly before the window was broken.

{¶ 7} On December 19, 2007, after her car was damaged, Stephens filed a complaint against Britton for aggravated menacing regarding the incident that occurred on December 16, 2007, in the parking lot at the Walgreen's on Salem Avenue. As stated previously, Britton was found guilty by the court after a bench trial held on January 28, 2008, and sentenced accordingly.

{¶ 8} It is from this judgment that Britton now appeals.

## II

{¶ 9} Britton's sole assignment of error is as follows:

{¶ 10} "The trial court committed reversible error in denying appellant's motion for judgment of acquittal because the state's evidence was insufficient to sustain a conviction for aggravated menacing and was against the manifest weight of the evidence."

{¶ 11} In her sole assignment, Britton contends that the trial court erred when it denied her Crim.R. 29 motion for acquittal, made at the close of the

state's evidence. Britton argues that the state failed to meet its burden on an essential element of aggravated menacing. Specifically, Britton asserts that the state failed to prove beyond a reasonable doubt that Stephens believed that Britton was going to cause *serious* physical harm to her person or property.

{¶ 12} Although both are raised by Britton in a single assignment of error, "a challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69.

{¶ 13} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, * * *.

{¶ 14} "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. ' "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." ' [*State v. Thompkins* (1997), 78 Ohio St.3d 380], 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717." *McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 70–71.

{¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684.

{¶ 16} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 17} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

{¶ 18} R.C. 2903.21(A) describes the offense of aggravated menacing as follows:

{¶ 19} "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 20} During the bench trial held on January 28, 2008, Stephens provided the following testimony while being questioned by the state:

{¶ 21} "Q: Okay. And so you indicated that you saw it was Christina Britton in the vehicle?

{¶ 22} "A: Yes.

{¶ 23} "Q: And what happened at that point?

{¶ 24} "A: As I sat in my car I was just looking just to make sure it was her and it was her. She pulled up to me and I asked her, said what are you doing? Are you sitting here watch [sic] me in a parking lot? What are you on? And she said I have [not] forgotten what happened. She reached inside her jacket. I don't know if she was getting ready to pull something out and I left. She said it's not over and I left.

{¶ 25} "Q: Now she said I haven't forgotten about you. What did that mean to you?

{¶ 26} "A: A year prior to that day we had an incident that took place. It began inside the pharmacy. She accused me of stealing her child's medication when in fact like her child's father or somebody had already picked them up and didn't tell her.

{¶ 27} "She glanced at me and she said I better not see that 'B' in the street or I'm gonna get her and when I got off work that day I saw her in the parking lot. She approached me in the parking lot.

{¶ 28} "Q: And when she approached you in the parking lot that day, what had occurred?

{¶ 29} "A: She basically just said I didn't like the way you handled the situation and she got out of her car, her and another person got out of her car and she approached me as if she was getting ready to attack me or wanted to fight or something.

{¶ 30} "Q: And this other person, was this a male or female?

{¶ 31} "A: It was male. She said it was her brother.

{¶ 32} " * * *

{¶ 33} "Q: And you indicate that you felt like she was coming to attack you along with this other person on that day?

{¶ 34} "A: Yes.

{¶ 35} "Q: Did she say things to you on that day as well?

{¶ 36} "A: Yes.

{¶ 37} "Q: What did she say to you then?

{¶ 38} "A: She just threatened me. She said I'm gonna get you, and she approached me coming at me lunging towards me. I didn't know if she had anything on her person.

{¶ 39} "Q: All right. So when you saw her—I'm gonna put you back to the December 16 day. When you saw her on that date and she said I got you, I got you, you thought she was referring to the previous incident almost a year before?

{¶ 40} "A: Yes.

{¶ 41} "Q: *And how did that make you feel*?

{¶ 42} "A: *It made me a little nervous.* I didn't know what she was capable of. Didn't know her. And I was wondering what this was all about, and I didn't know what she was gonna do."

{¶ 43} In support of her single assignment of error, Britton points out that Stephens testified that she was only "a little nervous" regarding her and Britton's confrontation on December 16, 2007, in the Walgreen's parking lot. Britton argues that Stephens's testimony with respect to her state of mind on December 16, 2007, is insufficient to establish that she feared that Britton would cause serious physical harm to her or her property.

{¶ 44} "Serious physical harm" is defined in R.C. 2901.01(A) as follows:

{¶ 45} "(5) 'Serious physical harm to persons' means any of the following:

{¶ 46} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

{¶ 47} "(b) Any physical harm that carries a substantial risk of death;

{¶ 48} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

{¶ 49} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

{¶ 50} "(e) Any physical harm that involves [some] acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶ 51} After a thorough review of the evidence submitted regarding the confrontation between Britton and Stephens on December 16, 2007, no testimony was adduced that established that Stephens believed that she would suffer serious physical harm at the hands of Britton. As an initial matter, Britton's two statements, "I haven't forgotten what happened" and "it's not over," while somewhat foreboding, do not constitute a threat of serious physical harm. Stephens's testimony that Britton's statement only made her "a little nervous" further demonstrates that Stephens did not believe that she was in danger of serious physical harm from Britton. Although the evidence was that Stephens was intimidated and justifiably unnerved, it cannot support a finding of a belief that Britton would cause her or her property "serious physical harm." The incident that occurred on December 19, 2007, in which Stephens's car was vandalized by an unknown assailant, should not have been introduced by the state to buttress the victim's mental state, i.e., her level of fear on December 16, 2007. We find that the evidence was insufficient to support the trial court's conclusion that the conduct and statements of Britton caused Stephens to believe that a threat of serious physical harm existed. Thus, the trial court erred by not granting Britton's Crim.R. 29(A) motion with respect to the charge of aggravated menacing.

{¶ 52} Regarding the facts before us, however, reasonable minds could have found that the conduct and remarks made to Stephens constituted a threat of physical harm rather than serious physical harm. Menacing, a fourth-degree misdemeanor described in R.C. 2903.22, is identical to aggravated menacing, except that the element of serious physical harm is missing.

{¶ 53} The statute states:

{¶ 54} "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 55} "Physical harm" is defined in R.C. 2901.01(C) as the following:

{¶ 56} "(C) 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 57} In *State v. Morris* (1982), 8 Ohio App.3d 12, 8 OBR 13, 455 N.E.2d 1352, the Eighth District Court of Appeals held that it was improper for a trial court to find a defendant guilty of a crime other than that charged in the indictment when the crime for which the accused was convicted was not a lesser included offense of the originally charged crime. The court in *Morris* held, however, that if the

lesser crime was indeed a lesser included offense of the charged crime, an accused who is found guilty of the lesser charge would not be prejudiced, since the lesser included offense is one in which all of the elements are present with others in the offense charged in the indictment. *Morris*, 8 Ohio App.3d at 15, 8 OBR 13, 455 N.E.2d 1352.

{¶ 58} An offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 215, 533 N.E.2d 286. Menacing is a lesser included offense of aggravated menacing. *State v. Striley* (1985), 21 Ohio App.3d 300, 303, 21 OBR 447, 488 N.E.2d 499. The sole difference between the two offenses is the degree of harm threatened.

{¶ 59} Based on the evidence adduced at trial, Britton would not have been prejudiced had the trial court reduced the charge stemming from the confrontation between Britton and Stephens on December 16, 2007, from aggravated menacing to menacing because menacing was a lesser included offense of the crime charged in the complaint. It is clear from the testimony of Stephens that Britton's conduct on that date did not rise to the level of threatening serious physical harm. Reasonable minds, however, could conclude beyond a reasonable doubt that Britton intended to inflict some physical harm upon Stephens based on the circumstances and history surrounding the incident which occurred on December 16, 2007. The court, in conducting a trial from the bench, should have exercised its inherent authority and found Britton guilty of the lesser included offense of menacing in the absence of a request from the defense.

## III

{¶ 60} In light of the foregoing, the judgment of the trial court is hereby modified accordingly, and this case is remanded to the trial court for proceedings in furtherance of this opinion. Pursuant to R.C. 2953.07, the trial court is instructed to carry out this order of modification and impose a sentence as authorized by R.C. 2903.22 for a conviction of the crime of menacing.

Judgment modified
and cause remanded.

GRADY and FROELICH, JJ., concur.