[Cite as *State v. Bates*, 2012-Ohio-6039.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

     Plaintiff-Appellee                      :          C.A. CASE NO.    23707

v.                                               :          T.C. NO.    2008CR3395

DESHAUN BATES                                    :          (Criminal appeal from
                                          Common Pleas Court)

     Defendant-Appellant                     :

                                                     :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____21st____ day of ____December____, 2012.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek, Ohio 45434
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**   Defendant-appellant Deshaun Bates appeals his conviction and sentence for

three counts of aggravated robbery, in violation of 2911.01(A)(1), all felonies of the first degree; one count of kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the second degree; and one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree. Firearm specifications were attached to the counts of aggravated robbery and kidnapping. Bates filed a timely notice of appeal with this Court on October 23, 2009.

{¶ 2} The instant appeal arises from incidents which occurred on August 15, 2008, and August 20, 2008. On August 15, 2008, Bates, accompanied by his co-defendants Steven Miller and Adrian Hand, approached Edward Henriquez, who was sleeping in his truck parked outside the RTA hub in Trotwood, Ohio. The three men offered Henriquez $5.00 for a ride to another location. Henriquez reluctantly agreed and the three men got into his truck, two in the cab and one in the bed of the truck. Henriquez testified that as he was driving away, Bates pulled out a handgun, pointed it at him, and ordered him to turn off the ignition. Bates went through Henriquez's pockets and took his cell phone and debit card.

{¶ 3} None of the three perpetrators was able to operate Henriquez's truck, which had a standard transmission. Accordingly, the men ordered Henriquez to drive them to an ATM where they attempted to use the stolen debit card. Henriquez, however, had no money in his bank account, and the men ordered him to drive around until they found someone else to rob. Shortly thereafter, Bates and his accomplices observed Frederick Smith walking home on Main Street near Bennington Drive in Harrison Township, Ohio. Henriquez was ordered to stop, and Bates and Miller exited the truck and assaulted Smith. Henriquez testified that he heard Smith yell "don't shoot." Henriquez then heard Smith make grunting noises as if he was being punched and/or kicked. Bates and Miller got back

in Henriquez's truck. Henriquez noted that the two men had a bag apparently stolen from Smith from which they removed a cell phone and some marijuana. Henriquez was ordered to start driving around again. Eventually, Henriquez drove to an apartment complex near Shiloh Springs Road. Bates, Miller, and Hand got out of the truck apparently to rob someone at the complex. They told Henriquez to wait for them because they still had his cell phone, but he left as soon as the three men walked away. When Bates was arrested six days later, he was found with Henriquez's cell phone in his possession. Henriquez testified that he called the police the next day to report the crime and identify his assailants.

{¶ 4} Deputy Thomas Feehan of the Montgomery County Sheriff's Department was dispatched to the area of Main and Bennington to investigate a call on August 15, 2008, regarding someone being attacked. Apparently, the caller had indicated that he was on the phone with his friend who stopped talking and stated "call the police" before abruptly ending the call. Dep. Feehan did not observe anyone in distress upon first arriving at the scene. As he was about to leave the area, Dep. Feehan was flagged down by Smith's mother who informed him that Smith was at home. She told Dep. Feehan that Smith had been robbed and assaulted. Dep. Feehan went to their home where he observed Smith with a large laceration on his forehead. Dep. Feehan testified that Smith complained of injuries all over his body. Dep. Feehan took several photographs of Smith before he left.

{¶ 5} On August 20, 2008, Kenneth Crowe was eating lunch in his car behind the Home Depot in Trotwood, Ohio, where he worked when he was approached by Bates, Miller, and Hand. After initially asking for a cigarette, Bates pulled out a handgun, pointed it at Crowe, and stated "give me every fucking thing you have." Bates then reached inside

4

the vehicle and took Crowe's cell phone and portable DVD player. Miller reached inside the vehicle and hit Crowe. Crowe got out of the car with a knife he kept for protection and began to run away. Miller took the gun from Bates and fired approximately three shots at Crowe.

{¶ 6} Crowe made it back to the store unscathed and called the police. Trotwood police responded and were able to apprehend Miller and Hand nearby. Bates, however, was able to get away. Bates ran to the house of Miller's girlfriend, Danisha Willard. Willard testified that while Bates was at her house, he described the robbery of Crowe and informed her that Miller and Hand had been arrested. Bates also told Willard about the earlier robberies of Henriquez and Smith.

{¶ 7} On September 10, 2008, Bates was indicted in Montgomery County on two counts of aggravated robbery, one count of kidnapping, and one count of felonious assault. Firearm specifications were attached to the counts of aggravated robbery and kidnapping. A second indictment was returned against Bates on November 21, 2008, adding a charge of aggravated assault with an attendant firearm specification.

{¶ 8} Bates filed a motion to suppress on December 2, 2008 in which he argued, in part, that the photo spreads shown by the police to Henriquez should have suppressed because the identification procedure was impermissibly suggestive. A hearing was held on said motion on May 27, 2009. In a judgment entry filed May 28, 2009, the trial court overruled Bates' motion to suppress.

{¶ 9} After Bates waived his right to jury trial, a trial was held before the court on September 8 & 9, 2009. On October 1, 2009, the trial court found Bates guilty on all

counts. On October 20, 2009, the trial court sentenced Bates to an aggregate sentence of twelve years in prison. A judgment entry of conviction was filed on October 22, 2009. An amended judgment entry was filed was filed on December 16, 2009, in order to correct the post-release control portion of his sentence.

{¶ 10} It is from this judgment that Bates now appeals.

{¶ 11} Bates' first assignment of error is as follows:

{¶ 12} "THE TRIAL COURT ERRED WHEN HE OVERRULED DEFENDANT'S MOTION TO SUPPRESS."

{¶ 13} In his first assignment, Bates contends that the trial court erred when it overruled his motion to suppress the photo spread identifications made by Henriquez. Specifically, Bates argues that the identification procedure was impermissibly suggestive because Henriquez was initially shown a photo spread in which he identified Bates, but was only fifty per cent sure it was him. The police then compiled a second photo spread wherein Henriquez positively identified Bates, stating that he was one-hundred per cent sure of his identification. Bates asserts that he was identified in the second spread only because he was the only suspect pictured in both spreads.

{¶ 14} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662,

2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 15} To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and that the identification itself was unreliable under the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401(1972); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). See, also, *State v. Broom*, 40 Ohio St.3d 277, 284, 533 N.E.2d 682 (1988); *State v. Moody*, 55 Ohio St.2d 64, 67, 377 N.E.2d 1008 (1978).

{¶ 16} In *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002-Ohio-939, this court addressed the issue of suggestive photographic confrontations:

{¶ 17} "In many cases, and in almost all cases in which the criminal offender is not known to his victim or other eyewitnesses and is not arrested at the time of the crime, those who witness the crime are asked to identify the perpetrator for purposes of police investigation through some form of confrontation. This confrontation may be in the form of a 'lineup,' a one-on-one 'show up,' or from a photograph or series of photographs displayed to the witness. When any of these systems of confrontation suggest, due to the manner or mode of their presentation, that one individual is more likely than others to be the perpetrator

of the crime, that fact increases the likelihood of misidentification and violates the right to due process of law of a defendant so identified. Identification testimony that has been tainted by an unduly or unnecessarily suggestive out-of-court confrontation may be suppressed on that basis."

{¶ 18} "However, even when a confrontation is unnecessarily or unduly suggestive, the identification testimony derived from the confrontation is not inadmissible solely for that reason. Reliability of the testimony is the linchpin in determining its admissibility. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process."

{¶ 19} "Reliability is determined from the totality of the circumstances. These circumstances include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."

{¶ 20} "The foregoing due process concerns are implicated only if and when a confrontation is unnecessarily or unduly suggestive. That prospect usually arises when the witness has been shown but one subject, whether in a 'showup' * * * or a single photograph * * *. Similarly, if the witness is shown pictures or photographs of several persons in which the photograph of one recurs or is in some way emphasized, undue suggestion may occur. However, even when the confrontation process is unduly or unnecessarily suggestive, the later identification testimony should not be excluded so long as the identification itself is

reliable." See *State v. Goodner*, 195 Ohio App.3d 636, 2011-Ohio-5018, 961 N.E.2d 254 (2d Dist.).

{¶ 21} In the instant case, Detective Andrew McCoy created the first photo spread shown to Henriquez which contained a photo of Bates on August 21, 2008, approximately six days after the robbery and kidnapping. The photo used by Det. McCoy came from a driver's license photo of Bates. Placing Bates' photo in the position number two, Det. McCoy created a photo spread that contained Bates' photograph and the photographs of five other individuals of similar height, weight, age, and appearance. Before showing Henriquez the first photo spread, Det. McCoy read him the written "Photographic Show-Up Instructions." Det. McCoy did not make any suggestions regarding which photo to choose. Moreover, Det. McCoy did not indicate that any of the photos in the spread was a suspect. After Henriquez acknowledged that he understood the instructions, Det. McCoy showed the photo spread to him.

{¶ 22} After examining the photo spread for "a minute or two," Henriquez chose the photo of Bates in position number two. Henriquez stated that the person in the photograph looked similar to one of the suspects who robbed him, but he was fifty to sixty percent sure. Det. McCoy informed Henriquez that he should only identify someone if he was positive that person was one of the suspects involved. Thereupon, Henriquez reaffirmed his initial choice, stating that the individual in position number two was one of the suspects who robbed him. Henriquez then circled and initialed Bates' photograph.

{¶ 23} Trotwood Detective Mike Pigman compiled a second photo spread containing a photograph of Bates, which was shown to Henriquez on August 26, 2008.

Unlike the driver's license photo chosen in the first spread by Det. McCoy, the photograph chosen by Det. Pigman of Bates was a more recent jail book-in photo which depicted him with a completely different hairstyle. In order to create the second photo spread, Det. Pigman reviewed approximately fifty additional photographs of other individuals and chose the five that most resembled Bates. A computer program then randomly placed Bates' photo in position number one in the second photo spread, unlike the first spread in which Bates' photo was in position number two.

{¶ 24} Utilizing the same procedure as Det. McCoy, Det. Pigman covered the second photo spread, read the instructions, and then handed the spread to Henriquez. Det. Pigman testified that Henriquez immediately chose Bates' photograph, the photo in position number one as one of the suspects who robbed him. Like Det. McCoy before him, Det. Pigman did nothing to suggest to Henriquez which photo to choose, nor did he give any indication that a suspect was even in the photo spread.

{¶ 25} Other than his bare assertion, Bates can point to no evidence in the record which demonstrates that showing Henriquez a second photo array containing Bates' photo was unduly suggestive. Bates' only argument regarding why the identification procedure was unduly suggestive is that Henriquez was shown two photo spreads both of which contained his photo. Initially, we note that the photos of Bates in each spread were different. Moreover, the positioning of Bates' photo in each spread differed. We further note that the photographic arrays were randomly created. Both Det. McCoy and Det. Pigman testified at the suppression hearing that they followed the proper procedure in showing the two random photo arrays to Henriquez who was able to identify Bates from

both arrays as the individual who robbed him.

{¶ 26} This is not an instance where Henriquez was unable to make an identification from the first photo spread (or made an incorrect identification), and the police tried again with another photo spread. We have previously found it to be unduly suggestive for the police to show a witness a second photo spread containing a photo of the defendant after the witness identified someone else entirely as the suspect in the first spread shown to him. *State v. Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634. Additionally, the defendant in *Chaffin* was the only bald male depicted in the second photo spread, and the defendant's photograph was in the sixth position in both spreads shown to the witness. *Id*. Simply put, the circumstances present in *Chaffin* are not present in the instant case. Henriquez made a positive identification of Bates from the first photo spread. Subsequently, Henriquez made a positive identification of Bates from the second photo spread where his appearance was different and his photo was in a different position in the spread.

{¶ 27} After a thorough review of the record, we find that there was nothing unduly suggestive regarding the process used to identify Bates as the perpetrator. Thus, the trial court did not err when it overruled Bates' motion to suppress Henriquez's identification of him.

{¶ 28} Bates' first assignment of error is overruled.

{¶ 29} Bates' second assignment of error is as follows:

{¶ 30} "INSUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT A CONVICTION FOR COUNT THREE, THE SPECIFICATION TO COUNT THREE, AND

COUNT FOUR OF [CASE NO.] 2008 CR 03395."

{¶ 31} In his second assignment, Bates argues the evidence adduced at trial was insufficient to support his convictions for the aggravated robbery and felonious assault of Frederick Smith. Specifically, Bates asserts that because Smith did not testify at trial, the State failed to present sufficient evidence that Smith was actually robbed, that Bates was one of the perpetrators, or that Smith suffered harm by means of a deadly weapon. For the following reasons, Bates' argument is without merit.

{¶ 32} If the evidence that supports a material element of an offense is insufficient, the defendant must be acquitted of that offense. In reviewing a claim of insufficient evidence, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Britton*, 181 Ohio App.3d 415, 2009-Ohio-1282, 909 N.E.2d 176 (2d Dist).

{¶ 33} In the September 10, 2008 indictment, Counts III and IV relate to the aggravated robbery and felonious assault of Smith. The aggravated robbery statute, R.C. 2911.01(A)(1), provides, in pertinent part: "No person, in attempting or committing a theft offense as defined in Section 2913.01(K) of the Revised Code, *** shall do any of the following: (A) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it or use it[.]" Since the weapon involved in this case was a handgun, a three-year firearm specification, in violation of R.C. 2929.14 and 2941.145, was attached to the aggravated robbery charge.

{¶ 34} Henriquez testified that he witnessed Bates and Miller confront a man on Main Street. Henriquez further testified that he heard the man yell "Don't shoot." Shortly thereafter, Henriquez heard the man begin "grunting" as if he was being punched and kicked. When he looked in their direction, Henriquez testified that he observed Bates and Miller standing over the man who was laying on the ground. Additionally, when Bates and Miller got back in the truck, they had a bag in their possession that they did not have before they confronted Smith.

{¶ 35} Deputy Feehan testified that after he was dispatched to the area, he was stopped by Smith's mother who identified herself and told him that her son had been robbed and beaten. We also note that Bates admitted during his testimony that they robbed Smith at gunpoint, and that they stole his bag and cell phone. Viewed in a light most favorable to the prosecution, there was sufficient evidence to find Bates guilty of aggravated robbery with the firearm specification.

{¶ 36} R.C. 2903.11(A)(2), pursuant to which Bates was charged in Count IV, provides, "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another *** by means of a deadly weapon *** ." The evidence adduced at trial established all of the elements necessary to sustain Bates' convictions for felonious assault with a deadly weapon. In addition to Henriquez's testimony that he observed Bates and Miller confront Smith and apparently beat him to the ground, Deputy Feehan testified that he observed firsthand that Smith had a large laceration on his forehead. Deputy Feehan also photographed the injury. Moreover, Bates admitted during his testimony that in addition to punching and kicking Smith during the assault, he was pistol whipped in the forehead. Upon viewing the photograph of Smith's forehead laceration taken by Deputy Feehan, Bates

admitted that the photograph clearly depicted the injury caused by the pistol whipping. Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Bates' convictions for felonious assault with a deadly weapon.

{¶ 37} Bates' second assignment of error is overruled.

{¶ 38} Bates' third assignment of error is as follows:

{¶ 39} "THE TRIAL COURT ERRED BY IMPOSING COURT COSTS IN THE SENTENCING ENTRY WITHOUT IMPOSING COURT COSTS AT THE SENTENCING HEARING."

{¶ 40} In his third assignment of error, Bates contends that the trial court erred by imposing court costs in the judgment entry of conviction without mentioning them at the sentencing hearing. We agree.

{¶ 41} In *State v. Mays*, 2d Dist. Montgomery No. 24168, 2012-Ohio-838, we recently stated the following:

{¶ 42} "The Ohio Supreme Court has held 'that a court errs in imposing court costs without so informing a defendant in court.' *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 1. It is true, as the state says, that if a defendant does not move for waiver of payment at the time of sentencing, 'the issue is waived and costs are res judicata.' *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph two of the syllabus. But that assumes the defendant was given an opportunity to seek a waiver. *See Joseph* at ¶ 12-13, citing *Threatt* at paragraph two of the syllabus. A defendant does not have such an opportunity if the trial court fails to mention costs at the sentencing hearing. *Id*. at ¶ 13. We have previously held that when court costs are not

mentioned at the sentencing hearing the defendant is denied the opportunity to seek a timely waiver of those costs. *State v. Lunsford* 193 Ohio App.3d 195, 2011-Ohio-964, 951 N.E. 2d 464, ¶ 16 (2d Dist.).”

{¶ 43} It is undisputed that in the instant case, the trial court failed to inform Bates at the sentencing hearing that it was imposing court costs on him. The remedy for this error, which we grant, is remand for the limited purpose of the defendant to seek a waiver of court costs.

{¶ 44} Bates’ third assignment of error is sustained.

{¶ 45} Bates’ fourth and final assignment of error is as follows:

{¶ 46} “THE TRIAL COURT ERRED BY DISAPPROVING THE TRANSFER OF THE DEFENDANT TO TRANSITIONAL CONTROL IN THE SENTENCING ENTRY.”

{¶ 47} Lastly, we note and the State concedes that the trial court erred in prematurely disapproving Bates for transitional control in the judgment entry of conviction. This error, however, can be cured by remanding this cause to the trial court for the limited purpose of amending the judgment entry to delete the disapproval of Bates for transitional control. See *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258 (2d Dist.); *State v. Porcher*, 2 Dist. Montgomery No. 24058, 2011-Ohio-5976; *State v. Griffie*, 2d Dist. Montgomery No. 24102, 2011-Ohio-6704; *State v. Dewitt*, 2d Dist. Montgomery No. 24437, 2012-Ohio-635.

{¶ 48} Bates’ final assignment of error is sustained.

{¶ 49} Bates’ third and fourth assignments of error having been sustained, the

judgment of the trial court is reversed, in part, and this matter is remanded to the trial court for proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

· · · · · · · · · ·

GRADY, P.J. and FROELICH, J., concur.

Copies mailed to:

Andrew T. French
Robert Alan Brenner
Hon. Gregory F. Singer