[Cite as *State v. Anderson*, 2024-Ohio-2003.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

    Appellee

v.

ERIC ANDERSON

    Appellant

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 29990

Trial Court Case No. 23-CRB-1517

(Criminal Appeal from Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on May 24, 2024

. . . . . . . . . . .

DAVID R. MILES, Attorney for Appellant

ALISSA SCHRINER, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Eric Anderson appeals from his conviction for aggravated menacing following a bench trial in the Dayton Municipal Court. Anderson contends that the trial court's judgment was not supported by sufficient evidence and was against the manifest weight of the evidence because he was more credible than the complaining witness. For the following reasons, we will affirm the judgment of the trial

court.

I.      Facts and Course of Proceedings

{¶ 2} On May 5, 2023, a criminal complaint was filed in Dayton Municipal Court alleging that Anderson had committed the offense of aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21(A).   Anderson filed a demand for a jury trial and waived his right to be tried within the time provided by R.C. 2945.71.   Anderson subsequently filed a waiver of his right to a jury trial.

{¶ 3} A bench trial was held on August 21, 2023.   Steve Smith, the information technology manager at the Montgomery County Sheriff's Office, testified first.   Tr. 5-7. He verified that the video recording presented by the State was a true and accurate recording from cameras positioned on Second Street in downtown Dayton.

{¶ 4} Bruce May testified next.   *Id.* at 7-51.   May was a cold case investigator with the Dayton Police Department and was the complaining witness in this case.   He had worked for over 40 years in law enforcement.   On the morning of May 4, 2023, shortly before 8:00 a.m., May was traveling northbound on Main Street in downtown Dayton. After passing through some construction, May noticed Anderson driving a white truck and coming up next to his vehicle on Main Street.   May eventually turned left onto Monument Street and then left onto Ludlow Street.   As he turned onto Ludlow Street, May noticed in his rear-view mirror that Anderson's vehicle was turning onto Monument Street.   As he proceeded down Ludlow, May turned right onto Second Street.   He then stopped in the right-hand lane at the first stop light on Second Street.   At that time, Anderson's

vehicle pulled up in the lane next to May's vehicle, and Anderson raised his middle finger at May while saying something to him. May rolled his window down so he could hear what Anderson was saying. May testified that Anderson said, "You are an asshole and I'm going to whip your ass." May tried to de-escalate the situation and responded, "If I did anything wrong to you, I'm sorry I didn't mean that." Anderson then stated, "I don't believe you. You think you have a newer car than I do. I retired from G.M. and I'm going to kill you. Do you understand that I'm going to kill you?"

{¶ 5} The traffic light changed to green, and May proceeded to pull forward away from the light. As he did so, May took his gun out of his pocket and put it in a more accessible place in case he needed it. May crossed Perry Street and slowed down behind vehicles that were waiting to turn into a parking lot. Anderson passed by May's vehicle and again yelled at May while raising his middle finger at him. Anderson did a U-turn and headed in the opposite direction on Second Street. May took out his cell phone and took a picture of Anderson's vehicle. Anderson then did another U-turn and approached May's vehicle from the rear. May decided to park to try to de-escalate the situation. After parking, May exited his truck and entered property that Anderson could not access with his vehicle. May saw Anderson pointing something black at him but could not determine what it was. May ultimately lost sight of Anderson and did not see him again that day. May then filed a police report about the incident.

{¶ 6} May testified that Anderson was uncontrollable and argumentative during their brief interaction. May made the decision to park in what was not his normal parking spot in order to get to safety and de-escalate the situation more quickly. May was fearful

for his own life and the safety of others around the situation. According to May, "I was completely threatened by his actions of saying he was going to kill me and he sounded very [passionate] about that when he said, 'do you understand me?'. I've never had anybody say that to me in my life and it's very threatening."

{¶ 7} Anderson testified last at the trial. Tr. 53-60. He was 63 years old at the time of the trial. On the morning of May 4, 2023, Anderson was heading home after dropping off a friend. According to Anderson, he was driving his white truck in downtown Dayton when May drove left of center and cut off Anderson's vehicle. This caused Anderson to have road rage. Anderson testified that people cut him off three or four times a day when he drives his truck. As a result of being cut off, Anderson repeatedly cursed at May and gave him the middle finger. He testified that he does the same thing when other people cut him off on the road. Anderson denied that he had threatened May. Rather, he stated that he said the following to May:

> I remember exactly what I said. Again, I told him – I gave him the finger, I told him he was – I called him an M.F. or S.O.B. and I told him he don't need to be driving no truck no better than that if you can't drive. I also told him that I used to work for G.M. and I never told him I retired. I been laid off four or five years now and I know what I'm doing and I know when people do it on purpose. That's what I told him.

*Id.* at 59-60.

{¶ 8} Anderson stated that he was too old to be threatening others. He explained that he did not own a gun and he did not have a cell phone with him during the incident.

Anderson had never met May prior to that day.

{¶ 9} On September 5, 2023, the trial court found Anderson guilty of aggravated menacing. Following a sentencing hearing, the trial court sentenced Anderson to 180 days in jail but suspended all 180 days. Anderson was placed on supervised probation for up to one year with the conditions that he complete the MAD Program through the probation department and comply with any treatment through the Drew Health Center. The trial court imposed a fine of $25 plus court costs. Anderson filed a timely appeal from the trial court's judgment.

II.     Anderson's Conviction Was Supported by Sufficient Evidence and Was Not Against the Manifest Weight of the Evidence

{¶ 10} Anderson raises the following two assignments of error:

APPELLANT'S CONVICTION FOR AGGRAVATED MENACING IS BASED UPON INSUFFICIENT EVIDENCE.

APPELLANT'S CONVICTION FOR AGGRAVATED MENACING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Anderson's assignments of error assert that his conviction for aggravated menacing was against the manifest weight of the evidence and not supported by sufficient evidence. Because these assignments of error are interrelated, we will address them together.

{¶ 12} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio

St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 13} When reviewing the sufficiency of the evidence, "the court does not engage in a determination of the witnesses' credibility." *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Rather, the relevant inquiry is whether the evidence presented, if believed, was sufficient to support the conviction. *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16, citing *Thompkins* at 390. The verdict will not be disturbed on appeal unless "the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jenks* at 273

{¶ 14} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is against the

manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The fact that the evidence is subject to different interpretations does not render a conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Martin* at 175.

{¶ 15} Based on the record before us, we must conclude that the conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Anderson was charged with and found guilty of aggravated menacing in violation of R.C. 2903.21(A), which provides, in part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." Anderson contends that May's "beliefs must be rational or reasonable under the circumstances of the case." Appellant's Brief, p. 5. According to Anderson, he neither possessed nor brandished a gun, and "[t]hreats without the ability to carry out the threats is insufficient for a conviction of aggravated menacing." *Id.* Anderson believes May was not fearful for his life and only testified that he was in order to secure a conviction. *Id.* at 5-6.

{¶ 16} Anderson cites three cases in support of his contention that the facts of this case did not establish aggravated menacing. Anderson first cites *Garfield Hts. v. Greer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936, which involved a road rage incident. The Eighth District noted, "The victim did not testify to any subjective belief that Greer would cause him serious physical harm. There was no evidence that the victim was scared or rattled from the incident. The victim merely testified that Greer 'pops a gun out,' not that Greer had pointed the gun at him." *Id.* at ¶ 7. Anderson next cites *Walton Hills v. Tate*, 2016-Ohio-697, 60 N.E.3d 611 (8th Dist.), which also involved an incident of road rage. There, the Eighth District concluded that "no testimony was adduced that established that [the victim] believed she would suffer serious physical harm at the hands of Tate. Tate's actions while foreboding, do not constitute a threat of serious physical harm. [The victim] only testified that Tate screamed 'pretty provocative and mean things at me.' She never testified that she believed she was in danger of serious physical harm from Tate." *Id.* at ¶ 15. Finally, Anderson cites *State v. Britton*, 181 Ohio App.3d 415, 2009-Ohio-1282, 909 N.E.2d 176 (2d Dist.), which involved a pharmacy employee who was confronted in her employer's parking lot by a customer over an incident that had occurred a year prior. Based on a review of that record, we stated that "no testimony was adduced that established that [the victim] believed that she would suffer serious physical harm at the hands of Britton. * * * [Her] testimony that Britton's statement only made her 'a little nervous' further demonstrates that [she] did not believe that she was in danger of serious physical harm from Britton." *Id.* at ¶ 51. We then concluded, "[a]lthough the evidence was that [the victim] was intimidated and justifiably unnerved, it

cannot support a finding of a belief that Britton would cause her or her property 'serious physical harm.' " *Id.*

{¶ 17} The cases cited by Anderson are inapposite to the facts before us in this appeal. In accordance with R.C. 2903.21(A), the State was required to prove that Anderson knowingly caused May to believe that Anderson would cause May serious physical harm. Unlike the victim testimony in the cases cited by Anderson, May testified at trial that Anderson had threatened to kill him after following May's vehicle. May described Anderson as passionate, uncontrollable, and argumentative. May stated that he was fearful for his own life. As a result of Anderson's threats, May was concerned enough about his safety that he took his gun out of his pocket to prepare to protect himself and parked where he normally did not park in order to get to safety more quickly. Further, Anderson conceded that he exhibited road rage during his interaction with May on May 4, 2023. Given this evidence, a rational trier of fact could have found beyond a reasonable doubt that Anderson knowingly caused May to believe that Anderson would cause serious physical harm to May. Therefore, Anderson's conviction was supported by sufficient evidence.

{¶ 18} Finally, Anderson argues that his conviction was against the manifest weight of the evidence because his "trial testimony was more credible than witness May." Appellant's Brief, p. 7. May testified in detail how the events unfolded on the morning of May 4, 2023, and what effect Anderson's actions had on May. The only real dispute in the record was over what exactly Anderson said to May when they both were stopped at the red light on Second Street just east of Perry Street. May testified that Anderson had

threatened to kill him and that he was passionate about that statement. Anderson stated that he had simply cursed repeatedly at May due to road rage caused by May's cutting off Anderson's vehicle. Anderson did not dispute that he had pursued May that morning and that he had been very upset with May. In the end, this case came down to witness credibility. Based on the record before us, we cannot conclude that this is one of those exceptional circumstances in which the evidence weighed heavily against the conviction.

{¶ 19} The assignments of error are overruled.

III.    Conclusion

{¶ 20} Having overruled both of Anderson's assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.