[Cite as *State v. Cotton*, 2026-Ohio-1677.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 30664 |
| | : | |
| | : | Trial Court Case No. 25CRB2558 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| JAMAR COTTON | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 8, 2026, the judgment of the trial court is affirmed and this matter is remanded to the trial court for the limited purpose of issuing a nunc pro tunc judgment entry that accurately reflects that appellant was convicted following a bench trial.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

**OPINION**

DAVID R. MILES, Attorney for Appellant
MARIE POINSATTE, Attorney for Appellee

EPLEY, J.

{¶ 1} Jamar Cotton appeals from his conviction for aggravated menacing, a first-degree misdemeanor, following a bench trial in the Dayton Municipal Court. Cotton asserts that his conviction is based on insufficient evidence and is against the manifest weight of the evidence. He further claims that his counsel rendered ineffective assistance at trial and that the trial court's judgment entry erroneously indicates that he entered a guilty plea. For the following reasons, the trial court's judgment is affirmed, and this matter is remanded to the trial court for the sole purpose of issuing a nunc pro tunc judgment entry to reflect the manner of Cotton's conviction.

## I. Facts and Procedural History

{¶ 2} The facts introduced at trial indicate that on July 15, 2025, Janie and Jessica Williams, along with Janie's son and stepson, brought balloons to the Xenia Bridge in Dayton where there was a memorial for a child who had been murdered. Cotton was also present at the bridge with his seven-year-old son. Janie and Jessica are sisters, and they know Cotton through their prior friendship with his child's mother, Chelsea Ray. During the bench trial, Janie testified that she had previous issues with Chelsea, and a few months before this incident, Chelsea accused Janie of coming to her home with a firearm and pointing it at Chelsea and Cotton's son. Janie denied this.

{¶ 3} Janie testified that while at the memorial, Cotton approached them very aggressively and began threatening to "kill [them] and everyone around [them]". She further

2

recalled that Cotton said, "Stay away from my son," and "don't talk about my son" while he was confronting her and Jessica. Janie recounted that she was able to grab her son and stepson before running across the street. According to Janie, Cotton was blocking Jessica from crossing the street, but Jessica was eventually able to step around him and follow Janie. Once they were all safely across the street, Janie called 911 and Cotton left the scene with his son. Janie testified that as they were leaving the scene, Chelsea drove past them with her window down and said, "Gotcha, bitch." Janie, Jessica, and Janie's son and stepson then went to Jessica's house, where the police responded. Janie testified that she had previously witnessed Cotton physically abuse Chelsea, and believed Cotton would follow through on his threats to harm or kill them.

{¶ 4} Janie's sister, Jessica, also testified during the bench trial. Jessica recalled that while visiting the memorial on the bridge, Cotton approached her and began screaming in her face. She said that Cotton was so close to her face that he was touching her, and he yelled, "Bitch, do you not know I don't play about my son? Keep my son's name out your mouth. Do you not know I will kill you and everybody around me? I'm not scared of you. I'm not scared of you." Jessica testified that Cotton is significantly taller than she is and that as he was yelling at her, he was hovering over her with his hand in her face. Jessica recalled that Janie's sons, as well as Cotton's son, were visibly shaken and scared. Jessica stated that when they were able to start walking away, Cotton followed them and continued repeating his threats. Jessica indicated that Cotton left the scene after they all reached the other side of the street and Janie called 911. Jessica said that she had also witnessed Cotton abuse Chelsea, so she believed that he would act on his threats to harm them.

{¶ 5} Cotton testified on his own behalf and denied threatening Janie or Jessica in any way. He testified that instead, he only told Jessica to "leave the kids out of it," and he

recalled repeating that five or six times. Cotton denied threatening anyone's life, threatening to harm anyone, or using any profanity. Contrary to Janie's and Jessica's testimony, Cotton stated that the encounter ended when "Janie gave [him] some nice feedback" regarding his son, to which he responded by reiterating his wish that she "leave the kids out of it" before he walked away. Cotton testified that as he was walking away, "Janie was on the phone and she said something in regard to something that got [his] attention." He recalled that he decided to call Chelsea at that point to tell her to come pick up their son because her friends were there and they were "acting weird and tripping." Cotton acknowledged that when he walked away, he walked in the opposite direction from where his car was parked because it was close to where Janie and Jessica were walking. He said that he did not know what they were doing or who Janie was calling, but it made him nervous. Cotton denied knowing that Janie and Jessica would be at the bridge that day and testified that he was not looking for them.

{¶ 6} Cotton was charged with one count of aggravated menacing, and on September 23, 2025, a bench trial was held in the Dayton Municipal Court. On September 25, 2025, the trial court found Cotton guilty as charged. On October 8, 2025, Cotton was sentenced to 180 days in the Montgomery County Jail, which was suspended, and he was placed on basic supervised probation for a period of six months. Cotton was further ordered to complete an anger management program through the Montgomery County Probation Department and pay a fine of $100.00 plus court costs. The trial court granted Jessica Williams's request for a post-conviction no contact order against Cotton.

{¶ 7} Cotton now appeals the trial court's judgment. He raises four assignments of error.

4

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 8} In his first and second assignments of error, Cotton asserts that his conviction for aggravated menacing is based upon insufficient evidence and is against the manifest weight of the evidence. Because these assignments of error are interrelated, we address them together.

{¶ 9} When reviewing the sufficiency of the evidence, "the relevant inquiry is whether the evidence presented, if believed, was sufficient to support the conviction." *State v. Anderson*, 2024-Ohio-2003, ¶ 13 (2d Dist.), citing *State v. Jones*, 2021-Ohio-3311, ¶ 16. The question is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 10} Conversely, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Anderson* at ¶ 14, citing *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.). "When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The fact that the evidence is subject to different interpretations does not render a conviction against the manifest weight of the evidence." *Id.*, citing *Wilson* at ¶ 14. "A judgment of conviction should be reversed as

being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.).

{¶ 11} Cotton was convicted of one count of aggravated menacing in violation of R.C. 2903.21(A), which states: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 12} R.C. 2901.22(B) provides the following definition of "knowingly": "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make an inquiry or acts with a conscious purpose to avoid learning the fact."

### A. Sufficiency of Evidence

{¶ 13} With respect to Cotton's assertion that his conviction is based on insufficient evidence, he contends that the State failed to prove beyond a reasonable doubt that he acted knowingly. He states that he denied threatening Janie or Jessica and notes that there was no testimony regarding his criminal intent or culpable mental state.

{¶ 14} However, "[c]ulpable mental states are frequently demonstrated through circumstantial evidence," and "[a] defendant's state of mind may be inferred from the totality of the circumstances." *State v. Leigh*, 2023-Ohio-91, ¶ 23 (2d Dist.). In this case, both Janie and Jessica testified that Cotton accosted them aggressively while they were at the

memorial on the bridge. Further, they both testified that they believed that Cotton would follow through on his threats to harm them based on his demeanor on the bridge, as well as the fact that they had both previously witnessed him abuse Chelsea. During Jessica's testimony, she described Cotton's intimidating physical presence, and recalled that he was so close to her during the encounter that she could feel his spittle hitting her face as he screamed at her. Both Janie and Jessica described Cotton's son and Janie's son and stepson as visibly frightened and upset during this encounter. Accordingly, based on the evidence and testimony presented, there was sufficient evidence for the trial court to reasonably conclude that Cotton acted knowingly when he approached Janie and Jessica and confronted them on the bridge, and that his conduct made them believe that he would cause serious physical harm to them.

## B. Manifest Weight

{¶ 15} Similarly, Cotton's conviction is not against the manifest weight of the evidence. Cotton asserts that Janie's and Jessica's testimony lacked credibility because they had previous issues with Chelsea and did not present the 911 call or other evidence to corroborate their testimony. Cotton states that this, along with the fact that he testified that he did not threaten Janie or Jessica, establishes that the trial court lost its way when it convicted him of aggravated menacing. He further asserts that this matter should be remanded for a jury trial.

{¶ 16} First, because aggravated menacing is considered a "petty offense" under Crim.R. 2(D), "where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial." Cotton did not demand a jury trial, and therefore it was appropriate for the trial court to hear this case and make determinations as to the issues of fact and law.

7

{¶ 17} Next, Cotton appears to argue that his testimony denying the allegations against him and the absence of police officer testimony and of evidence of the 911 call are enough to establish that the trial court lost its way when it found him guilty. However, Janie and Jessica testified in detail about Cotton's behavior towards them during the incident. They both described how angry Cotton appeared and how fearful they were that he would follow through with his threats to harm them and people close to them.

{¶ 18} Additionally, Cotton's testimony included various inconsistencies. Specifically, although Cotton stated that his interaction with Janie and Jessica on the bridge was peaceful and did not include any threats or profanity, he acknowledged that he heard Janie call 911 and tell the operator that she was scared. Cotton also admitted that when he left the scene with his son, he walked in the opposite direction from where his car was parked. According to Cotton, this was because Janie and Jessica were near his car and he was "nervous" about potential conflict. Cotton's own testimony, however, establishes that Janie was the one who had expressed fear and called the police. Cotton failed to provide any explanation as to why he would have been worried about his safety or potential conflict with Janie and Jessica if the encounter had taken place as calmly and peacefully as he described. Instead, it appears from the evidence and testimony submitted to the trial court that Cotton had confronted Janie and Jessica in a manner that made them fearful enough to call 911, and upon hearing that the police had been called, he left the scene. Markedly, Cotton also admitted to calling Chelsea to come pick their son up from the scene after his encounter with Janie and Jessica. This not only corroborates Janie's and Jessica's testimony that Chelsea drove past them immediately after the confrontation, but it also demonstrates that the incident created a situation that was unsafe for Cotton's child and undermines Cotton's testimony that the interaction on the bridge was calm and civil.

**{¶ 19}** Therefore, the trial court did not lose its way when it weighed the evidence and testimony and determined that Janie and Jessica were more credible than Cotton. Cotton's conviction for aggravated menacing is based on sufficient evidence and not against the manifest weight of the evidence. Accordingly, Cotton's first and second assignments of error are overruled.

### III. Ineffective Assistance of Counsel

**{¶ 20}** In his third assignment of error, Cotton claims that he received ineffective assistance of counsel because his attorney did not present certain evidence at trial. Cotton argues that his son witnessed the entire interaction, but he was not called to testify. Cotton also faults the lack of testimony from any of the police officers who responded to Janie's 911 call. Cotton maintains that the trial court "did not get the picture of the entire incident."

**{¶ 21}** "We review the alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989)." *State v. Clinard*, 2011-Ohio-876, ¶ 50 (2d Dist.). "Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance." *Id.*, citing *Strickland* at 688. In addition, "[t]he failure to call a witness to testify ordinarily is a matter of trial strategy that will not be second-guessed by a reviewing court." *Id.* at ¶ 51, citing *State v. Mills,* 2004-Ohio-267, ¶ 8 (2d Dist.). Rather, "defense counsel's decision not to call a witness is afforded a presumption of reasonableness." *Id.*, citing *Beavercreek v. LeValley,* 2007-Ohio-2105, ¶ 21 (2d Dist.).

**{¶ 22}** "As a further matter, it is well established that 'in direct appeals appellate courts do not consider claims that rest on matters outside the record.'" *State v. Hopkins*, 2025-Ohio-4681, ¶ 39 (2d Dist.), quoting *State v. Carver*, 2022-Ohio-2653, ¶ 28 (4th Dist.).

9

"Therefore, if demonstrating ineffective assistance of counsel requires proof outside the record, then such claim is not properly raised in a direct appeal." *Id.*, citing *State v. White*, 2018-Ohio-3076, ¶ 71 (2d Dist.) ("[a] claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record"), citing *State v. Harris*, 2017-Ohio-9052, ¶ 19 (2d Dist.).

{¶ 23} Here, although Cotton contends that the failure to call his son or the police officers who responded to Janie's 911 call constitutes ineffective assistance of counsel, there is no evidence in the record to support this claim. Cotton cannot offer anything beyond mere speculation as to what his son or the police officers might have said. Further, the record is devoid of any evidence as to the contents of their testimony or any indication that this testimony would have changed the trial court's ultimate determination of his guilt.

{¶ 24} Therefore, Cotton's claim for ineffective assistance of counsel relies on matters outside the record and cannot be considered on direct appeal. Cotton's third assignment of error is overruled.

### IV. Manner of Conviction

{¶ 25} In his fourth and final assignment of error, Cotton asserts that the trial court erroneously checked the box on the judgment entry of conviction indicating that he had entered a guilty plea, rather than that he had been found guilty following a bench trial. He requests that the trial court issue a nunc pro tunc entry to correct this clerical error, and the State agrees.

{¶ 26} Therefore, we sustain Cotton's fourth assignment of error. We remand the matter to the trial court to file a nunc pro tunc judgment entry to reflect that Cotton was convicted following a bench trial, not upon entering a plea of guilty.

## V. Conclusion

**{¶ 27}** The trial court's judgment is affirmed, and this matter is remanded to the trial court for the limited purpose of issuing a nunc pro tunc judgment entry that accurately reflects that Cotton was convicted following a bench trial.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.