[Cite as *State v. Jacks*, 2025-Ohio-2541.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-39 |
| Appellee | : | |
| | : | Trial Court Case No. 23-CR-0426 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| BROOKE JACKS | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 18, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

[[Applied Signature]]

ROBERT G. HANSEMAN, JUDGE

Epley, P.J., and Huffman, J., concur.

**OPINION**
CLARK C.A. No. 2024-CA-39

ADAM J. ARNOLD, Attorney for Appellant
ROBERT C. LOGSDON, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Brooke Jacks appeals from her convictions in the Clark County Court of Common Pleas after a jury found her guilty of having weapons while under disability, aggravated robbery, felonious assault, and multiple counts of murder. In support of her appeal, Jacks claims that her speedy-trial rights were violated. Jacks also claims that the trial court erred by not declaring a mistrial after a key defense witness was unable to testify in person and by allowing the witness to testify remotely via Zoom, which Jacks claims violated her constitutional right of confrontation. For the reasons outlined below, we disagree with Jacks' claims and affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On July 5, 2023, a Clark County grand jury returned a seven-count indictment charging Jacks with two counts of felony murder and single counts of aggravated murder, murder, felonious assault, aggravated robbery, and having weapons while under disability. All of the counts, excluding the count for having weapons while under disability, included a firearm specification. The charges stemmed from allegations that on the afternoon of May 6, 2019, Jacks shot and killed Jose Lopez Gutierrez in a parking area behind his residence in Springfield, Ohio, after Gutierrez refused Jacks' demand for his wallet. Jacks pled not guilty to the indicted charges, and the matter proceeded to a jury trial.

{¶ 3} At trial, the State presented Gutierrez's roommate, who testified that, on the afternoon in question, a female entered their residence and demanded Gutierrez's wallet while pointing a firearm at him. The roommate, who did not speak English, testified that when he saw the firearm, he went upstairs to call a friend so that the friend could contact the police. The roommate testified that Gutierrez and the female had been arguing because Gutierrez would not give the female his wallet and that the female fired her weapon. The roommate then went to the upstairs bathroom window and used his cellphone camera to record Gutierrez and the female while they were outside the residence.

{¶ 4} Gutierrez's roommate provided the police with the video from his cellphone, and the video was admitted into evidence at trial. The cellphone video showed Gutierrez lying motionless on the ground of the parking area behind his residence while a person was hunched over him. The person hunched over Gutierrez could be seen taking something from Gutierrez's pants pocket and then running away.

{¶ 5} When responding officers arrived at the scene, they observed Gutierrez on the ground with a gunshot wound to his chest. Medics attempted to treat Gutierrez, but he died as a result of the gunshot wound. Gutierrez's roommate testified that the person shown in the cellphone video was the female who fired the weapon. When officers provided him with a photo lineup, Gutierrez's roommate identified Jacks as the female in question.

{¶ 6} The State also presented evidence of surveillance videos taken from a residence near the parking area where Gutierrez was shot. The surveillance videos showed a female resembling Jacks wearing the same clothes as the person in the roommate's cellphone video walking toward Gutierrez's residence just minutes before the shooting. The surveillance videos also showed the same individual running in the opposite direction a few minutes later and leaving the area in a silver car. After investigating the matter, law

enforcement determined that the silver car shown in the surveillance video belonged to Jacks' father.

{¶ 7} The female in the surveillance videos also had a cigarette in her mouth as she walked toward Gutierrez's residence. An investigating officer testified that he collected a cigarette butt that was lying on the ground near Gutierrez's body and that the cigarette butt was sent to the Ohio Bureau of Criminal Investigation for DNA testing. The forensic DNA analyst who performed the testing testified that Jacks' DNA was present on the cigarette butt.

{¶ 8} The State also presented evidence connecting Jacks to the firearm that was used in the shooting. Specifically, officers discovered a shell casing at the scene of the shooting that matched one found at the residence of Jacks' boyfriend. The State called a firearms expert who testified that both shell casings were expelled from the same nine-millimeter semiautomatic firearm. In addition, the State presented evidence establishing that Jacks had a prior felony conviction for aggravated possession of drugs, which disqualified her from having a firearm.

{¶ 9} After the parties presented their evidence and gave closing arguments, the jury deliberated and found Jacks guilty of all the indicted charges and firearm specifications. At sentencing, the trial court merged the two counts of felony murder and the single counts of felonious assault and murder into the aggravated murder count. The trial court also merged the associated firearm specifications for those counts. Accordingly, Jacks was sentenced for aggravated murder with a firearm specification, aggravated robbery with a firearm specification, and having weapons while under disability. The trial court imposed an aggregate sentence of 50 years to life in prison for those offenses and specifications.

{¶ 10} Jacks now appeals, raising two assignments of error for review.

**First Assignment of Error**

{¶ 11} Under her first assignment of error, Jacks contends that her constitutional right to a speedy trial was violated and that her trial counsel was ineffective for failing to raise that claim in the trial court. Jacks' supporting argument, however, pertains to her statutory right to a speedy trial, as Jacks claims that she was not brought to trial within the time limit set forth under R.C. 2945.71. Regardless, Jacks never raised the issue of a constitutional or statutory speedy-trial violation in the trial court; accordingly, she is precluded from raising those issues on appeal. *See State v. Garner*, 2023-Ohio-1685, ¶ 10 (2d Dist.); *State v. Wilson*, 2020-Ohio-2962, ¶ 22 (2d Dist.); *State v. Wood*, 2016-Ohio-143, ¶ 22*; State v. McGillvary*, 2012-Ohio-5538, ¶ 10 (2d Dist.); *State v. Taylor*, 2002-Ohio-7017, ¶ 37. However, Jacks is not precluded from raising those issues in the context of an ineffective assistance claim. *See State v. Mango*, 2016-Ohio-2935, ¶ 18 (8th Dist.), citing *Cleveland v. White*, 2013-Ohio-5423, ¶ 7 (8th Dist.); *Garner* at ¶ 11-25 (reviewing waived speedy-trial claim in the context of an ineffective assistance claim).

{¶ 12} To establish ineffective assistance of counsel, a defendant must demonstrate both that: (1) trial counsel's conduct was deficient; and (2) trial counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Lloyd*, 2022-Ohio-4259, ¶ 15. "[I]n order to demonstrate that counsel provided ineffective assistance of counsel by failing to file a motion to dismiss for speedy trial violations, the defendant must show that the motion would have been successful and the case would likely have been dismissed." *Mango* at ¶ 18, citing *White* at ¶ 7. " 'Counsel cannot be [ineffective] for failing to file a fruitless motion.' " *Id*., quoting *State v. Cottrell*, 2012-Ohio-4583, ¶ 8 (4th Dist.).

{¶ 13} Because Jacks claims that her trial counsel was ineffective for failing to file a motion to dismiss on speedy-trial grounds, we will review whether there was a speedy-trial violation that warranted the dismissal of her case. Before doing so, we note that the constitutional right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution is statutorily enforced in Ohio by the provisions of R.C. 2945.71 et seq. *State v. Adams*, 43 Ohio St.3d 67, 68 (1989). " ' "[B]ecause constitutional speedy trial guarantees may be found to be broader than speedy trial statutes," a constitutional right to a speedy trial must be analyzed separately from a statutory speedy trial right.' " *State v. Knott*, 2024-Ohio-2289, ¶ 19 (2d Dist.), quoting *State v. Frazier*, 2023-Ohio-4222, ¶ 6 (9th Dist.), quoting *State v. Williams*, 1994 WL 135309, *2 (9th Dist. Apr. 20, 1994).

*Statutory Speedy-Trial Law and Analysis*

{¶ 14} Under Ohio's statutory scheme, the time limit for bringing an accused to trial on a felony offense is 90 days after arrest if the accused is incarcerated the entire time preceding trial; otherwise, it is 270 days after arrest. *State v. Dankworth*, 2007-Ohio-2588, ¶ 31 (2d Dist.), citing R.C. 2945.71(C) and (E). "A defendant establishes a prima facie speedy trial violation when his motion [to dismiss] reveals that a trial did not occur within the time period prescribed by R.C. 2945.71." *State v. Hill*, 2020-Ohio-2958, ¶ 6 (2d Dist.), citing *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). That time period, however, can be extended or tolled for a number of events listed under R.C. 2945.72(A) through (J).

{¶ 15} Under R.C. 2945.72(H), speedy-trial time is tolled for: "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." Therefore, "[c]ontinuances

that a defendant requests toll the clock under R.C. 2945.75(H)[.]" *State v. Lewis*, 2021-Ohio-1895, ¶ 35 (2d Dist.). Likewise, "[a] continuance granted upon the parties' joint motion tolls time under R.C. 2945.72(H) because the motion is made, in part, by the defendant. Joint motions for a continuance toll a defendant's speedy-trial time because they can be attributed to both parties." (Citations omitted.) *State v. White*, 2024-Ohio-2426, ¶ 35 (1st Dist.); *accord State v. Nelson*, 2024-Ohio-5750, ¶ 47 (12th Dist.); *State v. Dillon*, 2006-Ohio-3312, ¶ 35 (10th Dist.); *State v. Brown*, 2005-Ohio-2939, ¶ 44 (7th Dist.); *State v. Austin*, 2019-Ohio-686, ¶ 47 (5th Dist.).

{¶ 16} In contrast, "[c]ontinuances that are granted at the State's request or that are ordered sua sponte by the trial court must be reasonable to toll speedy-trial time." *State v. Sweeney*, 2024-Ohio-3425, ¶ 23 (2d Dist.), citing *State v. King*, 70 Ohio St.3d 158, 162 (1994), *State v. Knight*, 2005-Ohio-3179, ¶ 30 (2d Dist.), and *State v. Stamps*, 127 Ohio App.3d 219, 224 (1st Dist. 1998). " 'If they are not reasonable, both types of continuances must be charged against the state for speedy-trial purposes.' " *Sweeney* at ¶ 23, quoting *Stamps* at 224.

{¶ 17} "[W]here 'continuances were not requested solely by the State or sua sponte by the court, there is no requirement under R.C. 2945.72(H) that these continuances be reasonable.' " *State v. Graham*, 2019-Ohio-2020, ¶ 42 (10th Dist.), quoting *State v. Watson*, 2013-Ohio-5603, ¶ 24 (10th Dist.). Therefore, "[w]e need not . . . inquire into the reasonableness of a continuance granted at the request of defense counsel, as the statute provides that '[t]he period of any continuance granted on the accused's own motion' extends speedy-trial time." *State v. Dennison*, 2013-Ohio-5535, ¶ 19 (10th Dist.), quoting R.C. 2945.72(H). "The only continuances that must be reasonable in order to toll the statutory time limits are those requested by the state or sua sponte ordered by the trial court." (Citation

omitted.) *State v. Glass*, 2011-Ohio-6287, ¶ 16 (10th Dist.).

{¶ 18} Under R.C. 2945.72(E), speedy-trial time is also tolled for: "Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." To qualify as a tolling event under R.C. 2945.72(E), "all that the statute requires is that the delay be necessitated by the defendant's action." *State v. Belville*, 2022-Ohio-3879, ¶ 31. Therefore, "[a]ny period of delay necessitated by a defendant's own motion automatically acts as a tolling event." *State v. Whitfield*, 2023-Ohio-240, ¶ 29 (2d Dist.), citing *Belville* at ¶ 31.

{¶ 19} It is well established that a motion to suppress tolls speedy-trial time pursuant to R.C. 2945.75(E) "for at least a reasonable time until the motion is heard." *State v. Lilly*, 1985 WL 17499, *3 (2d Dist. Nov. 19, 1985); *accord State v. Boyd*, 2023-Ohio-2079, ¶ 21 (2d Dist.); *State v. Wood*, 2024-Ohio-5597, ¶ 41 (2d Dist.) "There is no bright line rule with respect to what constitutes a reasonable amount of time to render a decision on a motion to suppress." *Wood* at ¶ 41. "Rather, a reviewing court must carefully examine the record and consider the particular ' "facts and circumstances of each case." ' " *Id.*, quoting *State v. Taylor*, 1995 WL 680052, *12 (2d Dist. Nov. 17, 1995), quoting *State v. McDaniel*, 1995 WL 75394, *3 (4th Dist. Feb. 21, 1995).

{¶ 20} In this case, Jacks was incarcerated the entire time preceding her trial; therefore, the State was required to bring Jacks to trial within 90 days of her arrest. The record establishes that Jacks was arrested on July 19, 2023. The day after Jacks' arrest, the presiding trial court judge recused himself, and the court's administrative judge assigned a new judge to Jacks' case the same day. Because speedy-trial time begins to run the day after arrest, and because a judge's recusal tolls speedy trial time under R.C. 2945.72(H), Jacks' speedy trial time did not begin to run until July 21, 2023. *See Euclid v. Amiott*, 2024-

Ohio-1583, ¶ 14 (8th Dist.); *State v. Nichols*, 2013-Ohio-308, ¶ 21 (4th Dist.).

{¶ 21} Sixty-seven days later, Jacks orally moved for a trial continuance on September 25, 2023. The trial court granted the continuance and rescheduled Jacks' trial for January 23, 2024. Pursuant to R.C. 2945.72(H), Jacks' requested continuance tolled her speedy-trial time from September 25, 2023, to January 23, 2024.

{¶ 22} During the aforementioned tolling period, on January 5, 2024, the parties met in chambers and jointly agreed to another trial continuance to give the defense's DNA expert time to analyze recently received DNA files. Jacks' counsel advised that the DNA expert would need approximately four to six weeks to complete the analysis. As a result, the parties agreed to select a new trial date after the DNA expert completed the analysis. The parties also specifically agreed that speedy-trial time would be tolled until the new trial date. *See* Entry (Jan. 5, 2024). Although the record is unclear as to when the DNA analysis was completed, it is clear that, on April 1, 2024, the trial court issued an entry scheduling a new trial date for May 20, 2024. Therefore, pursuant to R.C. 2945.72(H) and the parties' agreement, Jacks' speedy-trial time remained tolled until May 20th.

{¶ 23} We note that the three-month delay in scheduling the new trial date was due in part to Jacks filing a motion to suppress on January 25, 2024, as the trial court thereafter held a suppression hearing on March 18, 2024,[1] and then issued its suppression decision on March 21, 2024. Following the suppression decision, the trial court issued the April 1 order scheduling Jacks' jury trial for May 20. Under the circumstances of this case, we find that the trial court issued the suppression decision within a reasonable amount of time. Therefore, pursuant to R.C. 2945.72(E), the suppression proceeding instituted by Jacks was

---

[1] On March 19, 2024, Jacks filed a motion for the trial court to hear additional evidence on her motion to suppress, but she withdrew that motion on March 28, 2024.

a secondary tolling event.

{¶ 24} On May 20, 2024, the parties appeared for trial, and the trial court overruled a last-minute motion in limine and alternative motion to continue the trial filed by Jacks. The matter thereafter proceeded to voir dire and opening statements. After opening statements, the parties agreed to a mistrial and a trial continuance due to Jacks' counsel's informing the jury of an inadmissible hearsay statement during his opening statement. In response, the trial court declared a mistrial and continued Jacks' trial to May 28, 2024. Pursuant to R.C. 2945.72(H), the joint continuance tolled Jacks' speedy time until May 28. On May 24, 2024, Jacks' defense counsel moved to continue the May 28 trial date. The trial court denied the motion, however, and Jacks' trial went forward as scheduled.

{¶ 25} Due to all the aforementioned tolling events, only 67 days of speedy-trial time elapsed between Jacks' arrest and the May 28 trial. Accordingly, there was no statutory speedy-trial violation. Jacks was tried within the 90-day statutory time limit, as summarized in the table below.

| Date | Event | Days Counted |
|---|---|---|
| July 19, 2023 | Jacks is arrested. | 0 days |
| July 20, 2023 | The trial court judge recuses himself from Jacks' case. <br><br> The administrative judge assigns Jacks' case to a new judge. Speedy-trial time begins running the following day. <br><br> *Speedy-trial time is tolled pursuant to R.C. 2945.72(H).* | 0 days |

| Sept. 25, 2023 | Jacks' trial counsel makes an oral motion for a trial continuance. The trial court grants Jacks a continuance to January 23, 2024.<br><br>*Speedy-trial time is tolled pursuant to R.C. 2945.72(H).* | 67 days<br>(July 21 to Sept. 25) |
|---|---|---|
| Jan. 5, 2024 | The parties jointly agree to continue the January 23, 2024 trial date in order to give the defense's DNA expert four to six weeks to analyze recently received DNA files. The parties also jointly agree to select a new trial date after the expert completes his analysis and that speedy-trial time is tolled until the new trial date.<br><br>*Speedy-trial time is tolled pursuant to R.C. 2945.72(H).* | 0 days |
| Jan. 25, 2024 | Jacks files a motion to suppress. The trial court schedules a suppression hearing for March 18, 2024, and issues a decision on March 21, 2024, sustaining in part and overruling in part Jacks' motion to suppress. The trial court thereafter schedules Jacks' jury trial for May 20, 2024.<br><br>*Secondary tolling event. Speedy-trial time is tolled pursuant to R.C. 2945.72(E).* | 0 days |
| May 20, 2024 | Jacks' jury trial begins as scheduled but results in a mistrial due to defense counsel's reference to an inadmissible hearsay statement in his opening statement. The trial court continues Jacks' trial until May 28, 2024.<br><br>*Speedy-trial time is tolled pursuant to R.C. 2945.72(H).* | 0 days |
| May 28, 2024 | Jacks' jury trial commences. | 0 days |

| July 19, 2023 to May 28, 2024 | TOTAL SPEEDY-TRIAL TIME ELAPSED = | 67 days |
|---|---|---|

*Constitutional Speedy-Trial Law and Analysis*

{¶ 26} Courts apply a four-factor balancing test when determining whether there is a constitutional speedy-trial violation. *Barker v. Wingo*, 407 U.S. 514, 530-533 (1972). " 'The factors include: (1) the length of the delay "between accusation and trial"; (2) the reason for the delay; (3) the defendant's assertion, if any, of his right to a speedy trial; and (4) the prejudice, if any, to the defendant.' " *State v. Hart*, 2022-Ohio-4550, ¶ 90 (2d Dist.), quoting *State v. Wagner*, 2021-Ohio-1671, ¶ 14 (2d Dist.), quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992). (Other citation omitted.) "[T]he length of the delay is a particularly important factor as it 'is to some extent a triggering mechanism.' " *State v. Lee*, 2024-Ohio-1802, ¶ 9 (2d Dist.), quoting *Barker* at 530. This is because, " '[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' " *Id*., quoting *Barker* at 530. "The length of delay becomes presumptively prejudicial as it approaches one year in length." *Id*., citing *Doggett* at 652, fn. 1; *State v. Adams*, 2015-Ohio-3954, ¶ 90.

{¶ 27} In this case, Jacks was tried within a year of being indicted; accordingly, the delay in bringing her to trial was not presumptively prejudicial. Even if it were presumptively prejudicial, the delay in bringing Jacks to trial was due to continuances requested and agreed to by Jacks and the suppression proceedings instituted by Jacks. Jacks also never asserted her right to a speedy trial in the trial court and never once complained about the pace of the proceedings. " 'It is well established under our law that the right to a speedy trial

conferred by the Constitution is not self-executing." *State v. Perkins*, 2009-Ohio-3033, ¶ 12 (2d Dist.), quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140 (1963); *accord Sweeney*, 2024-Ohio-3425, ¶ 51 (2d Dist.). " 'Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to invoke the protection of the Constitution. . . . In other words, there can be no denial where there has been no demand.' " *Id*. We also fail to see how Jacks was prejudiced by the delay in bringing her to trial when the delay was caused by Jacks' own motions.

**{¶ 28}** For all the foregoing reasons, the four-factor balancing test does not weigh in favor of finding a constitutional speedy-trial violation. Because there was no constitutional or statutory speedy-trial violation, a motion to dismiss on those grounds would not have been successful. As a result, Jacks cannot establish that her trial counsel performed deficiently by failing to file such a fruitless motion in the trial court. Without deficient performance on the part of her trial counsel, Jacks' ineffective assistance claim necessarily fails.

**{¶ 29}** Jacks' first assignment of error is overruled.

### Second Assignment of Error

**{¶ 30}** Under her second assignment of error, Jacks claims that the trial court erred by failing to declare a mistrial after one of her subpoenaed witnesses, Denise Lally, failed to appear in person at trial and by permitting Lally to testify remotely via Zoom, i.e., a video conferencing platform that allows users to connect online. Jacks claims that the trial court's decision in that regard was an abuse of discretion that violated her constitutional right of confrontation.

*Standard of Review*

**{¶ 31}** "Decisions granting or denying motions for mistrial are reviewed for abuse of discretion." *In re K.C.*, 2025-Ohio-1203, ¶ 49 (2d Dist.), citing *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). "To establish an abuse of discretion premised upon a failure to grant a mistrial, material prejudice must be demonstrated." *State v. Easter,* 2024-Ohio-1389, ¶ 21 (2d Dist.), citing *State v. Adams*, 2015-Ohio-3954, ¶ 198. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

*Right of Confrontation*

**{¶ 32}** The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right "to be confronted with the witnesses against him." This provision "encompasses the rights to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination." *State v. Carter*, 2024-Ohio-1247, ¶ 27, citing *Maryland v. Craig*, 497 U.S. 836, 845-846 (1990). "[I]t has been understood to 'guarantee[ ] the defendant a face-to-face meeting with witnesses appearing before the trier of fact.' " *Id*., quoting *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (Other citation omitted.) "When the accused has been allowed to confront, or meet face to face, all the witnesses called to testify against him on the trial, the constitutional requirement has been complied with." *Summons v. State*, 5 Ohio St. 325, 341 (1856).

**{¶ 33}** In *Craig*, the United States Supreme Court "held that face-to-face confrontation could be dispensed with only in limited circumstances 'where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony

is otherwise assured.' " *Carter* at ¶ 28, quoting *Craig* at 850. For example, "[t]he *Craig* court deemed the state's interest in protecting child witnesses from trauma sufficiently important to justify allowing a child-abuse victim to testify without face-to-face confrontation." *Id*. at ¶ 29, citing *Craig* at 855. Accordingly, *Craig* approved the lower court's decision to permit the alleged child-abuse victim to testify against the accused via a one-way closed-circuit television. *Craig* at 840-855.

{¶ 34} More recently, in *Carter*, the Supreme Court of Ohio explained that "*Craig* requires a 'case-specific finding' based on evidence presented by the parties that an exception to face-to-face confrontation is 'necessary to further an important state interest' or 'public policy' objective." *Carter* at ¶ 36, quoting *Craig* at 850. In *Carter*, the trial court allowed an out-of-state witness to testify by video conference where the witness was deemed unavailable to testify due to unpredictable winter weather conditions, uncertain airline schedules, and an increase in the spread of COVID-19. *Id*. at ¶ 37. The Supreme Court held that the trial court's "generalized concerns about COVID-19 risks and travel delays did not constitute a 'case specific finding of necessity'. . . sufficient to abridge [the defendant's] right to face-to-face confrontation." *Carter* at ¶ 45. Accordingly, under the *Craig* analysis, the Supreme Court found that the trial court had erred by allowing the out-of-state witness to testify by video conference. *Id*. at ¶ 45-46. However, the court ultimately determined that the trial court's error in that regard was harmless since the remaining evidence overwhelmingly supported the defendant's convictions for sexual battery. *Id*. at ¶ 46-53.

{¶ 35} Jacks relies on *Craig* and *Carter* for the proposition that her right of confrontation was violated by the trial court's permitting Lally to testify remotely via Zoom. We note that the record establishes that Lally was unavailable to appear in person at trial because she was being hospitalized for a serious medical condition. After speaking with

Lally off the record, the trial court was satisfied that Lally's medical condition would prevent her from testifying in person "for quite some time. . . probably weeks." Trial Tr., p. 534. In light of those circumstances, the trial court decided to allow Lally to testify remotely from her hospital room via Zoom as opposed to declaring a mistrial. According to Jacks, allowing Lally to testify remotely did not serve an important state interest or public policy objective and thus violated her right of confrontation and warranted a mistrial.

{¶ 36} As a preliminary matter, we must determine whether Lally was an adverse witness against Jacks, because the United States Supreme Court has made it clear that "the Confrontation Clause applies only to witnesses 'against the accused.' " *Samia v. United States*, 599 U.S. 635, 644 (2023), citing *Crawford v. Washington*, 541 U.S. 36, 50 (2004*); State v. Blakeman*, 2002 WL 857659, *3 (2d Dist. May 3, 2002) (the right of confrontation "is available for exercise only when adverse witnesses testify"); *State v. Brown*, 1991 WL 87179, *2 (5th Dist. May 13, 1991) ("[t]he right of confrontation is generally identified with a witness who testifies against the accused"). Indeed, the witnesses at issue in *Craig* and *Carter* were both called by the State to provide evidence against the accused. That said, the Confrontation Clause is not limited to witnesses called by the State; it may also apply to a defense witness who testifies adversely to the defendant. *Chambers v. Mississippi*, 410 U.S. 284, 297-98 (1973); *Calvo v. Donelli*, 2007 WL 1288098, *10 (E.D.N.Y. Apr. 30, 2007); *Wasko v. Singletary*, 966 F.2d 1377, 1381 (11th Cir. 1992).

{¶ 37} In this case, the defense called Lally as a witness in an attempt to establish that it was Lally's daughter who shot Gutierrez. Lally testified that in May 2019, she saw a news release on Facebook that displayed one of the surveillance videos showing the shooting suspect. Lally testified that after watching the surveillance video, she called the Springfield Police Department and told an officer that the suspect in the video resembled

her daughter. Lally also testified that her daughter and Jacks had the same build, looked the same from behind, wore their hair the same, and dressed similarly. Trial Tr., p. 538. However, Lally also testified that she told the police that she was unsure whether it was her daughter on the surveillance video because the video was grainy and the suspect did not walk like her daughter.

{¶ 38} The fact that Lally was called by the defense on direct to provide testimony supporting a mistaken identity defense in Jacks' favor suggests that she was not an adverse witness to which the Confrontation Clause applied. We do note, however, that the record indicates that Lally was not cooperative when it came to communicating with the defense regarding her attendance at trial and that a portion of her trial testimony was unfavorable to Jacks. Specifically, Lally testified that she had also told the police that Jacks had pistol-whipped her daughter and that her daughter had said that she had some kind of evidence that would "put [Jacks] away for [Gutierrez's] murder." Trial Tr., p. 541.

{¶ 39} That said, even if Lally were considered an adverse defense witness to whom the right of confrontation applied, and even if we agreed with Jacks' argument that the trial court's decision to allow Lally to testify remotely via Zoom did not further an important state interest or public policy objective, the resulting Confrontation Clause violation would amount to harmless error. Confrontation Clause violations are harmless when " 'the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt.' " *State v. Hood*, 2012-Ohio-6208, ¶ 43, quoting *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus; *accord Carter* at ¶ 47; *State v. Moritz*, 63 Ohio St.2d 150 (1980), paragraph two of the syllabus ("A violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable

doubt.").

{¶ 40} Here, the State presented an overwhelming amount of evidence establishing that Jacks was guilty of the convicted offenses in this case. As previously discussed, Jacks was convicted of aggravated murder, aggravated robbery, and having weapons while under disability. As relevant to this case, aggravated murder is committed when an individual "purposely cause[s] the death of another . . . while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit . . . aggravated robbery[.]" R.C. 2903.01(B). Aggravated robbery is committed when an individual has a deadly weapon on or about his person or under his control while attempting or committing a theft offense, and he either displays the weapon, brandishes it, indicates that he possesses it, or uses it. R.C. 2911.01(A)(1).

{¶ 41} Regarding Jacks' convictions for aggravated murder and aggravated robbery, the State presented testimony from an eyewitness who identified Jacks as the female who shot Gutierrez and went through his pockets after demanding his wallet. The State also presented video evidence establishing that the shooter resembled Jacks and was driving a vehicle that belonged to Jacks' father. In addition, the evidence established that Jacks' DNA was found on a cigarette butt lying near Gutierrez's body. The shell casing evidence also established that Jacks had access to the firearm that was used during the shooting. The State also presented evidence establishing that Jacks had a prior felony drug conviction and was under a weapons disability at the time of the shooting, which supported her conviction for having weapons while under disability under R.C. 2923.13(A)(3).

{¶ 42} Given the overwhelming evidence of Jacks' guilt, the Confrontation Clause violation asserted by Jacks amounts to harmless error. Jacks cannot establish that she was materially prejudiced by the trial court's failure to declare a mistrial for Lally's inability to

testify in person. Because Jacks did not suffer material prejudice, the trial court's failure to declare a mistrial did not constitute an abuse of discretion.

{¶ 43} Jacks' second assignment of error is overruled.

### Conclusion

{¶ 44} Having overruled both of Jacks' assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J., concurs.

HUFFMAN, J., concurs:

{¶ 45} I concur in the opinion of the majority affirming Jacks' conviction. I write separately to note that the majority finds, as a preliminary matter, that it must be determined if Lally was an adverse witness to Jacks for Confrontation Clause purposes but then fails to so determine, basing its decision instead upon the overwhelming evidence of guilt against Jacks, regardless of the nature of Lally's testimony, and further finds any error in admitting Lally's testimony to be harmless. In my opinion, counsel for Jacks waived the Confrontation Clause issue herein by questioning Lally, Jacks' own witness, thereby ending any analysis of Jacks' right to confront Lally.

{¶ 46} At trial, after the court spoke to Lally, the court determined that she was unavailable to testify because she was hospitalized for a serious medical condition and would continue to be unavailable for some time. The court advised counsel and Jacks that "her testifying here in court in this trial is just not going to be possible, short of the court granting a mistrial; and I am very reluctant to do that at this point." According to the court, "this is the next best option for the defense to secure her as a witness and to obtain testimony

from her." Jacks was left with the unenviable position of either calling Lally via Zoom or not calling her at all. Jacks made the decision to call the witness remotely. The State did not call Lally as a witness. The court advised the jury as follows: ". . . This next witness is unavailable to be here in person. We've gone to great lengths and efforts to secure her opportunity to testify today as a witness. So you'll treat her testimony just as you would with respect to any other witnesses. You'll evaluate her credibility just as you would with respect to any other witness." Counsel for Jacks then proceeded to question Lally.

{¶ 47} "Waiver is the intentional relinquishment or abandonment of a known right." *State v. Pasqualone*, 2009-Ohio-315, ¶ 13, citing *United States v. Olano*, 507 U.S. 725, 733 (1993). " 'Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.' " *Id.*, quoting *Olano* at 733.

{¶ 48} Certain rights, such as the right to counsel, the right to enter a plea of guilty or not guilty, the right to waive a jury, or the right to testify on one's own behalf "can be waived only by a defendant personally, after he or she is fully informed of them." *Id.* at ¶ 23, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464-465 (1938). In contrast, "as to other rights, a lawyer must have 'full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval.' " *Id.* at 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). " 'Thus, decisions by counsel are generally given effect as to what arguments to pursue, . . . what evidentiary objections to raise, . . . and what agreements to conclude regarding the admission of evidence . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.' " *Id.*, quoting *New York v. Hill*, 528 U.S. 110, 115 (2000).

**{¶ 49}** "[C]ourts should accord proper weight to defense counsel's role in representing a client, including regarding waiver of the right to confrontation, viewing such a decision as a matter of trial tactics or strategy." *Id.* at ¶ 25, citing *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999). Any suggestion that defense counsel cannot waive confrontation rights on behalf of his client is "belied by the holdings of a number of courts that have reasoned that a defendant's counsel generally is capable of waiving Confrontation Clause rights without the specific approval of the defendant." *Id.* at ¶ 22. Thus, it "is a well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived." *Id.* at ¶ 14.

**{¶ 50}** Here, defense counsel chose to call Lally by Zoom, thereby waiving any objection to the remote testimony and any violation of the right to confrontation. Counsel's examination of Lally aligns with precedent that confrontation rights can be waived by counsel. Put differently, the testimony about which Jacks complains was adduced by counsel for Jacks, and as such we need not determine the nature of Lally's testimony as adverse or aligned with Jacks. Under these circumstances, I would conclude that any Confrontation Clause issue was waived by counsel for Jacks.