[Cite as *State v. Gade*, 2026-Ohio-2201.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO (VILLAGE OF NEW LEBANON) | : | C.A. No. 30347 |
| | : | |
| Appellee | : | Trial Court Case No. 23-CRB-1010 W |
| | : | |
| v. | : | (Criminal Appeal from Municipal Court) |
| | : | |
| SARAH A. GADE | : | **FINAL JUDGMENT ENTRY & OPINION** |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 12, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

OPINION

JOHN A. FISCHER, Attorney for Appellant
NATHANIEL W. ROSE and KEITH A. FRICKER, Attorneys for Appellee

EPLEY, J.

{¶ 1} Sarah Gade appeals her convictions in the Montgomery County Municipal Court of making false statements, making false alarms, and obstructing official business, which followed a jury trial. Gade asserts that the trial court erred when it denied her request for a mistrial and that her convictions were based on insufficient evidence and against the manifest weight of the evidence. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} According to the State's evidence at trial, Gade shares one daughter, Z.S., with her ex-husband, Brandon Smith. Z.S. was born in 2017. Brandon is now married to Brittany Smith, who has four daughters from a previous relationship. Brandon described his relationship with Gade prior to October 2022 as "cordial." However, in October 2022, custody issues began to arise, and Gade began to find excuses as to why Z.S. could not see Brandon during his scheduled parenting time. These issues led Brandon to file a motion for contempt against Gade and Gade to file a motion to decrease Brandon's parenting time with Z.S.

{¶ 3} On April 14, 2023, Brandon was scheduled to have parenting time with Z.S. However, an hour before Brandon was going to pick up Z.S., Gade sent him a text telling him that she was going to be late coming back from an appointment and asking if he could bring Z.S. back to her house early on Sunday. Gade then sent Brandon another text asking if she could keep Z.S. with her for the weekend. When Brandon said no to that request,

2

Gade sent him a text telling him not to come pick Z.S. up. Brandon went to Gade's home, accompanied by a police officer, to pick up Z.S. and exercise his scheduled parenting time. Upon Brandon and the officer's arrival, Gade was in her yard screaming that he was a pedophile and that he would never see his daughter again.

{¶ 4} Although Brandon did not initially understand why Gade called him a pedophile, it became clear to him when he was served with a civil sexually oriented offense protection order. In the order, Gade reported that, on April 14, 2023, Z.S. told her that Brandon and Brittany had been touching her inappropriately. Gade additionally filed a complaint with the National Center for Missing and Exploited Children through the Department of Homeland Security ("DHS") alleging that Brandon had also abused children in other states while he was traveling for work. On May 12, 2023, Brittany called Brandon at work and told him that Montgomery County Children Services ("MCCS"), local police officers, and officers for the Department of Homeland Security were at their home to remove Brittany's four daughters due to Gade's allegations. Brandon testified that he and Brittany fully cooperated with the investigation and turned over all of their electronic devices and cell phones. They also allowed law enforcement to search their home. Brittany's daughters were placed in the care of Brandon's mother and were not allowed to return home until after they were forensically interviewed, a week later. Brandon and Brittany ultimately received letters from MCCS that the report of sexual abuse with regard to each of Brittany's four daughters was unsubstantiated and the case would be closed.

{¶ 5} Notwithstanding, during the summer of 2023, it appeared someone had entered Brandon's information into several employment sites, placing him on a list to receive e-mails from each site. However, these e-mails were not addressed to "Brandon Smith." Rather, they were addressed to names including "Chester the Molester," "Pedophile," and "Fat Perv."

3

Brandon also received telephone calls during which the caller would refer to him by these names.

{¶ 6} Gade voluntarily dismissed the protection order against him on September 5, 2023. Ultimately, Brandon went to a meeting with officials from DHS, and they informed him and Brittany that no evidence had been found to substantiate Gade's allegations and they were being officially cleared. Additionally, although Brandon was not allowed to see Z.S. for nearly a year while the investigation took place, he was ultimately awarded full custody of Z.S.

{¶ 7} According to the investigative narrative prepared by law enforcement, several officers spoke with Gade on August 7, 2023, to discuss their investigation. At that time, Gade reportedly admitted to providing false information to the Internet Crimes Against Children task force and to signing Brandon up for the websites out of spite.

{¶ 8} Three months later, Gade was charged by complaint with three counts of making false statements, three counts of making false alarms, one count of telephone harassment, and three counts of obstructing official business.   All of the counts except the telephone harassment charge related to Gade's conduct on April 14, 2023.   Gade pled not guilty to the charges.

{¶ 9} Gade subsequently moved to suppress statements that she had made to the police, and a hearing on the motion was held on April 22, 2024. A transcript of that hearing is not part of the record, but the parties agree that "law enforcement claimed that Ms. Gade admitted that she knew that prior statements that she had made to law enforcement were false. Ms. Gade had always denied making such statements, and the interview during which such statements were allegedly made was not recorded. Such admission would have

constituted a confession to certain of the charges against her." *See* App.R. 9(C) statement. The same day, the trial court granted Gade's motion to suppress her statements.

{¶ 10} The matter proceeded to a jury trial in October 2024, during which Agent Stephen Stewart of DHS, among others, was called to testify for the State. Stewart's testimony was neither recorded nor transcribed. However, in accordance with App.R. 9(C), the parties agreed upon and the trial court approved a statement regarding the unrecorded portion of the proceedings. According to the App.R. 9(C) statement, Agent Stewart testified that Gade "had made admissions regarding her knowledge that some of her statements made to law enforcement were false."

{¶ 11} Because evidence regarding these statements previously had been suppressed by the trial court, Gade's counsel immediately moved for a mistrial, arguing that Gade could not receive a fair trial because the jury had heard that she knowingly made false statements to law enforcement. The trial court denied Gade's request for a mistrial and asked Gade if she would like the court to instruct the jury to disregard the inadmissible part of Agent Stewart's testimony. Gade decided not to include an instruction to the jury and instead decided to leave the issue alone so as not to draw more attention to it.

{¶ 12} Following the conclusion of the jury trial, Gade was found guilty of two counts each of making false statements (Counts 1 and 2), making false alarms (Count 4 and 5), and obstructing official business (Counts 8 and 9). The jury found her not guilty of telephone harassment (Count 7), and the State dismissed the remaining three charges (Counts 3, 6, and 10). After a presentence investigation, the court sentenced Gade to 180 days in jail for her convictions of making false alarms and making false statements, the balance of which was suspended. Gade was ordered to serve 90 days in jail for her convictions of obstructing

5

official business. She was also sentenced to five years of community control. Gade moved for a stay of her sentence, but her request was denied.

{¶ 13} Gade now appeals from her conviction, raising two assignments of error. The State did not file a responsive brief.

## II. Denial of Motion for Mistrial

{¶ 14} In her first assignment of error, Gade asserts that the trial court erred when it denied her motion for a mistrial due to Agent Stewart's testimony. She contends that because the jury heard Agent Stewart's testimony regarding her knowledge that certain statements made to law enforcement were false, she did not receive a fair trial.

{¶ 15} "'Decisions granting or denying motions for mistrial are reviewed for abuse of discretion.'" *State v. Jacks*, 2025-Ohio-2541, ¶ 31 (2d Dist.), quoting *In re K.C.*, 2025-Ohio-1203, ¶ 49 (2d Dist.). "'To establish an abuse of discretion premised upon a failure to grant a mistrial, material prejudice must be demonstrated.'" *Id.*, quoting *State v. Easter,* 2024-Ohio-1389, ¶ 21 (2d Dist.). "'Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'" *Id.*, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "'To determine whether the defendant was deprived of a fair trial, we must determine whether, absent the improper remarks, the jury would have found the appellant guilty beyond a reasonable doubt.'" *State v. Holland*, 2023-Ohio-4834, ¶ 45 (2d Dist.), quoting *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).

{¶ 16} The jury convicted Gade of making false statements, making false alarms, and obstructing official business. With respect to the offense of making false statements, R.C. 2921.13(A)(3) states, in relevant part: "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when

6

the statement is made with purpose to mislead a public official in performing the public official's official function."

{¶ 17} Next, regarding the offense of making false alarms, Gade was charged under R.C. 2917.32(A)(1), which states: "No person shall do any of the following: initiate or circulate a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that the report or warning is false and likely to cause public inconvenience or alarm."

{¶ 18} Finally, as to the offense of obstructing official business, R.C. 2921.31(A) states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 19} In the present case, notwithstanding Agent Stewart's testimony regarding Gade's suppressed statements, we do not agree with Gade that she would not have been convicted of these offenses absent the testimony at issue. The jury heard testimony from Brandon during which he detailed the relevant timeline, beginning with the custody issues with Gade that led to his filing for contempt and leading to Gade's allegations against him and his wife. These events all happened in close sequence. Brandon also detailed the removal of Brittany's four daughters from their home as a result of Gade's allegations, including the significant law enforcement presence at their home during the removal. Brandon related his concern about the trauma the children experienced by having to undergo forensic interviews, as well as his lack of contact with Z.S. for approximately one year while the investigation took place. Additionally, the jury heard testimony by members of law enforcement who were involved in the investigation of this matter. Detective Gretchen

7

Weir testified that there was no evidence on either Brandon's or Brittany's electronic devices of any of the offenses Gade alleged nor were any cameras or evidence of sexual abuse found in their home.

{¶ 20} Notably, Jacob Andrew Kovach, the guardian ad litem appointed in this matter, testified that he believed that Gade was sharing information about the investigation with Z.S., and Z.S. was repeating that information in response to his questions when he interviewed her. He further stated that there were inconsistencies between Gade's statements to him and statements she made on social media regarding her accusations against Brandon and Brittany. Kovach also acknowledged that although Z.S. was only seven years old, she used words like "overmedicated" to describe how Brandon and Brittany would allegedly administer sleeping medicine to one of Brittany's daughters. Kovach expressed that this was concerning because, in his experience, a child of Z.S.'s age cannot normally recognize overmedication.

{¶ 21} The State also presented video evidence in which Gade spoke to Z.S. and asked her where she learned the words "clit" and "tit." Gade is heard in the video asking Z.S. whether she heard them at Brandon's home. Z.S. is audible saying that she did not know where she heard them and that she makes up songs sometimes and uses words that rhyme even if she does not know what they mean. In the video, Z.S. denied hearing those words at her father's house and did not appear to know what either word actually meant until Gade explained to her that they refer to "private parts."

{¶ 22} Even without Agent Stewart's improper testimony, the evidence presented to the jury supported, beyond a reasonable doubt, that Gade knew the allegations she was making were false, that those false statements were likely to cause public alarm, and that they would obstruct law enforcement's investigation into Brandon and Brittany. Further,

8

Gade was not materially prejudiced by Stewart's improper statement. Accordingly, the trial court did not abuse its discretion when it overruled Gade's motion for a mistrial.

{¶ 23} Gade's first assignment of error is overruled.

### III. Sufficiency and Manifest Weight of the Evidence

{¶ 24} In her second assignment of error, Gade asserts that her convictions were based on insufficient evidence and against the manifest weight of the evidence. Gade contends that there was no evidence that she knew her statements to law enforcement were false and, therefore, her convictions should be vacated.

{¶ 25} When reviewing the sufficiency of the evidence, "the relevant inquiry is whether the evidence presented, if believed, was sufficient to support the conviction." *State v. Anderson*, 2024-Ohio-2003, ¶ 13 (2d Dist.), citing *State v. Jones*, 2021-Ohio-3311, ¶ 16. The question is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 26} Conversely, "'a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive.'" *Anderson* at ¶ 14, quoting *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.). "When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*,

9

quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The fact that the evidence is subject to different interpretations does not render a conviction against the manifest weight of the evidence." *Id.,* citing *Wilson* at ¶ 14. "A judgment of conviction should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.).

### A. Sufficiency of Evidence

{¶ 27} Regarding Gade's assertion that her convictions were based on insufficient evidence, she contends that, other than the introduction of Agent Stewart's inadmissible statements during his testimony, there was no evidence that Gade acted knowingly when she made the accusations at issue. Rather, she contends that she was acting in good faith and merely believed what Z.S. had reported to her.

{¶ 28} R.C. 2901.22(B) provides the following definition for "knowingly": "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make an inquiry or acts with a conscious purpose to avoid learning the fact." Further, "[c]ulpable mental states are frequently demonstrated through circumstantial evidence," and "[a] defendant's state of mind may be inferred from the totality of the circumstances." *State v. Leigh*, 2023-Ohio-91, ¶ 23 (2d Dist.).

{¶ 29} In this case, the State presented evidence that, immediately prior to Gade's allegations against Brandon and Brittany, Gade was not complying with the custody

agreement involving Z.S. and that Brandon had filed a motion for contempt. Brandon also testified that when he went to pick up Z.S. on April 14, 2023, for his scheduled parenting time, Gade was screaming at him that he was a pedophile and would never see Z.S. again. Additionally, Detective Weir and the guardian ad litem, Kovach, testified regarding their suspicions that Gade had shared with Z.S. certain details of the investigation into Brandon and Brittany and had possibly attempted to coach Z.S. to say certain things to law enforcement that would corroborate Gade's accusations.

{¶ 30} The timing of the custody issues in relation to Gade's accusations against Brandon and Brittany, as well as the testimony of Weir and Kovach that there was no evidence found to substantiate the allegations and that Z.S. appeared to have been coached, demonstrates to us that there was sufficient evidence for the jury to conclude that Gade knew that her allegations against Brandon and Brittany were false, and that these false allegations would create alarm in the community and impede law enforcement's ability to conduct official business.

## B. Manifest Weight

{¶ 31} Similarly, Gade's convictions were not against the manifest weight of the evidence. Gade contends that the evidence clearly demonstrated that she had legitimate concerns regarding Brandon's behavior with Z.S. and "the jury could not have concluded otherwise." Gade further asserts that the jury plainly lost its way when it convicted her and speculates that this may have been due to Agent Stewart's improper testimony.

{¶ 32} Contrary to Gade's assertions, Agent Stewart's improper testimony was not the only evidence presented as to Gade's culpable mental state. Irrespective of Agent Stewart's testimony, the jury heard evidence about the circumstances of Gade and Brandon's co-parenting relationship during the time leading up to the allegations. Testimony

11

and evidence showed inconsistencies in Gade's statements to law enforcement and her statements on social media, and video evidence showed Gade coaching Z.S. about certain explicit words. The jury also heard testimony from Detective Weir and Kovach regarding the lack of evidence found on Brandon's and Brittany's electronic devices and in their home. Weir and Kovach also testified that certain words Z.S. used were not common for a child of her age and seemed to have come from information that Gade shared with the child about the investigation.

{¶ 33} The jury did not lose its way when it weighed the evidence and determined that Gade knowingly made false statements to law enforcement regarding Brandon's conduct with Z.S. It was the province of the jury, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt the charged offenses. In reaching its verdict, the jury was free to believe all, part, or none of each witness's testimony. *State v. Peterson*, 2021-Ohio-3947, ¶ 27 (2d Dist.). Gade's convictions for making false statements, making false alarms, and obstructing official business were based on sufficient evidence and were not against the manifest weight of the evidence. Accordingly, Gade's second assignment of error is overruled.

## IV. Conclusion

{¶ 34} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.